**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PAMELA BRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 01 C 7770 |
| | ) | |
| CITY OF CHICAGO, a municipal | ) | Judge Holderman |
| corporation | ) | |
| | ) | |
| Defendant. | ) | |

**DOCKETED**

AUG 2 6 2002

FILED
AUG 2 3 2002
MICHAEL W. DOBBINS
U.S. DISTRICT C

**NOTICE OF FILING**

To:     **Lara A. Walicek
        Ernest T. Rossiello & Associates, P.C.
        300 West Washington Street, Suite 1004
        Chicago, Illinois 60606**

PLEASE TAKE NOTICE that I have this day filed with the Clerk of the United States District Court for the Norther District of Illinois, Eastern Division, **Defendant City of Chicago's Motion for Summary Judgment**, a copy of which is attached.

DATED at Chicago, Illinois, this 23rd day of August, 2002.

Respectfully submitted,

MARA S. GEORGES
Corporation Counsel of the
City of Chicago

BY: _____

VALERIE DESPIES HARPER
STAN B. STEC
Assistant Corporation Counsel

30 N. LaSalle Street
Suite 1020
Chicago, Illinois 60602
(312) 744-4746/5002

11

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**DOCKETED**

AUG 2 6 2002

PAMELA BRAY,            )
                                     )
        **Plaintiff,**          )
                                     )
     **v.**                        )     No. 01 C 7770
                                     )
**CITY OF CHICAGO, a municipal**  )     Judge Holderman
**corporation,**                   )
                                     )
        **Defendant.**       )

## DEFENDANT CITY OF CHICAGO'S MOTION FOR SUMMARY JUDGMENT

Defendant City of Chicago ("City"), by its attorney, Mara S. Georges, Corporation Counsel of the City, hereby moves this honorable Court, pursuant to Federal Rule of Civil Procedure 56, for entry of Summary Judgment.

1.      Plaintiff Pamela D. Bray filed her complaint in federal court on October 9, 2001.

2.      The defendant is the City.

3.      Plaintiff alleges in her complaint that while employed as a probationary police officer ("PPO") for the Chicago Police Department ("CPD"), she was sexually harassed by her direct supervisor and then retaliated against when she was terminated in violation of Title VII of the Civil Rights Act, 42 U.S.C. 2000e-2(a)(1) and 2000e-3(a), respectively.

4.      While her complaint specifies sexual harassment by one alleged direct supervisor, in her deposition, plaintiff alleged sexual harassment by two police officers -- one female (Donna Adams) and one male (Bruce Askew) -- who served as Field Training Officers ("FTOs") for some of her field training cycles.

5.      Summary judgment for the City on plaintiff's sexual harassment claim is

appropriate because neither Adams nor Askew are supervisors within the meaning of Title VII. Also, neither of their behavior was sufficiently severe or pervasive to constitute objective or subjective sexual harassment for Title VII purposes. Moreover, even if their conduct were actionable, the City would not be liable. Plaintiff admits that she complained pursuant to the City's anti-harassment policy only after she was terminated and that the conduct had stopped even before a Field Training Review Board convened to review her performance. Then, she refused to cooperate with the City's investigation of her complaint.

6.      Plaintiff also brings a claim of retaliation based on her termination under Title VII.

7.      Summary judgment is appropriate for the City on plaintiff's claim of retaliation because plaintiff cannot establish the first element because she admits that she did not complain of the harassment under the City's sexual harassment policy to a supervising officer until after her discharge. As to the second and third elements, plaintiff cannot establish that she was performing her job according to the City's legitimate expectations because she admittedly cheated on tests and quizzes and failed two tests at the police academy; she failed two of her field training cycles, received low marks for the others; each of her FTOs commented on her lack of assertiveness; she remained in the squad car while her partner was arresting a "big" and "stocky" man; and her productivity was low after she finished her training cycles so much so that she only made one (1) arrest, recovered one (1) vehicle, wrote eight (8) parking tickets and made three (3) Chicago Transit checks over 20 working days, the equivalent of an average officer's daily activity. Finally, plaintiff cannot establish the fourth element of her *prima facie* case, because the record is void of evidence that plaintiff was treated less favorably than similarly situated

2

probationary police officers who did not engage in statutorily protected activity.

8.      Even if plaintiff were to succeed in proving her *prima facie* case, her retaliation claim cannot survive summary judgment because the City has established that it had a legitimate business reason for terminating plaintiff -- she performed poorly and acted in a manner inconsistent with officer safety – and she cannot proffer evidence of pretext.  In fact, there is no evidence the decision-makers were aware of plaintiff's alleged protected activity until well-after they terminated plaintiff's employment.

9.      In support of this motion, the City submits a statement of undisputed facts as to which there is no genuine issue and a memorandum of law pursuant to Local Rule 56.

WHEREFORE, defendant City of Chicago respectfully requests this Court to grant Summary Judgment in it favor and against plaintiff Pamela D. Bray on her entire complaint.

Respectfully submitted,

MARA S. GEORGES
Corporation Counsel of the
City of Chicago

By:  _____
VALERIE DEPIES HARPER
STAN B. STEC
Assistants Corporation Counsel

30 North LaSalle Street
Suite 1020
Chicago, IL 60602
(312) 744-4746/5002

3

## CERTIFICATE OF SERVICE

I hereby certify that I have caused to be mailed a true and correct copy of the attached

**Defendant City of Chicago's Motion for Summary Judgment** to the attorney at the address

indicated below on this 23rd day of August 2002.

To:     **Lara A. Walicek**
        **Ernest T. Rossiello & Associates, P.C.**
        **300 West Washington Street, Suite 1004**
        **Chicago, Illinois 60606**

_____
Stan B. Stec
Assistant Corporation Counsel

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**DOCKETED**

AUG 2 6 2002

| | |
|---|---|
| PAMELA BRAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 01 C 7770 |
| | ) |
| CITY OF CHICAGO, a municipal | ) Judge Holderman |
| corporation | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT CITY OF CHICAGO'S MEMORANDUM OF LAW**
**IN SUPPORT OF IT MOTION FOR SUMMARY JUDGMENT**

Defendant City of Chicago ("City"), by its attorney, Mara S. Georges, Corporation

Counsel of the City, submits this memorandum of law in support of its motion for summary

judgment on plaintiff Pamela Bray's complaint and incorporates by reference herein the City's

Local Rule 56.1(a) Statement of Undisputed Material Facts.

**INTRODUCTION**

On October 24, 2000, the City terminated Bray's employment as a probationary police

officer with the Chicago Police Department for substandard performance. Def. Rule 56.1(a)

Stmt. ¶¶ 74-81, 85-89. Her deficiencies included unsafe actions such as remaining in her squad

car when she should have been assisting her partner with the arrest of a "big, stocky" suspect.

Def. Rule 56.1(a) Stmt. ¶¶ 58-59, 81-87.

Now, in her Federal Complaint, Bray alleges that she was "inappropriately sexually

harassed" in violation of 42 U.S.C. 2000e-2(a)(1) by her direct "super-visor [sic]." Compl. ¶ 6.

She also alleges that after "complaining of the gender-based hostile work environment alleged,

defendant failed . . . to take prompt, effective and appropriate corrective action to eradicate the

unlawful conduct; more particularly defendant materially altered the terms, conditions and

privileges of plaintiff's employment." Compl. ¶ 7. She further alleges that the City then

retaliated against her in violation of 42 U.S.C. 2000e-3(a) by discharging her. Compl. ¶ 7. Bray makes these allegations despite admitting that she never reported any sexual harassment pursuant to the City's anti-harassment policy during her employment. Def. Rule 56.1(a) Stmt. ¶ 105.

While her complaint and EEOC charge specifies sexual harassment by one alleged direct supervisor, in her deposition, plaintiff alleged sexual harassment by two police officers -- one female (Donna Adams) and one male (Bruce Askew) -- who served as Field Training Officers ("FTOs") for some of her field training cycles. Neither Adams nor Askew are supervisors within the meaning of Title VII. Also, neither of their behavior was sufficiently severe or pervasive to constitute objective or subjective sexual harassment for Title VII purposes. Moreover, even if their conduct were actionable, the City would not be liable. Bray admits that she complained pursuant to the City's anti-harassment policy only after she was terminated and that the conduct had stopped even before the Field Training Review Board had convened to review her performance. Def. Rule 56.1(a) Stmt. ¶¶ 103, 105. Then she refused to cooperate with the City's investigation of her complaint. Def. Rule 56.1(a) Stmt. ¶¶ 121-25.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the City moves for summary judgment on plaintiff's Complaint in its entirety.

## ARGUMENT

## I. BRAY CANNOT PROCEED WITH HER SEXUAL HARASSMENT CLAIM BECAUSE SHE CANNOT ESTABLISH THAT SHE WAS SUBJECTED TO ACTIONABLE CONDUCT IN VIOLATION OF TITLE VII

To establish a *prima facie* case of hostile environment sexual harassment, a plaintiff must demonstrate that: "(1) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; 2) the harassment was based on [the individual's] sex; 3) the sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance in creating an intimidating, hostile or offensive working environment that affected seriously the psychological well-being of the

2

plaintiff; and 4) there is a basis for employer's liability." Parkins v. Civil Constr. of Ill. Inc., 163
F.3d 1027, 1032 (7th Cir. 1998).

**A.      The Alleged Behavior Does Not Arise to the Level of Actionable Sexual
         Harassment**

Title VII only protects against workplace discrimination that is based on sex, race or
some other protected status; it is not a "general civility code designed to purge the workplace of
all boorish or even all harassing conduct." Berry v. Delta Airlines, Inc., 260 F.3d 803, 808 (7th
Cir. 2001). "[T]he occasional vulgar banter, tinged with sexual innuendo of coarse or boorish
workers" generally does not create a work environment that a reasonable person would find
intolerable. Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430 (7th Cir. 1995).

The hostile work environment must be both objectively and subjectively offensive, "one
that a reasonable person would find hostile or abusive, and one that the victim in fact did
perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998). Factors that must
be considered in determining if a hostile environment was created include, "frequency of the
discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere
offensive utterance; and whether it unreasonably interferes with an employee's work
performance." Id. at 787-88.

1.     Adams' alleged comments were not objectively or subjectively offensive

Bray's sexual harassment allegations against Adams are limited to verbal comments that
fall far short of constituting sexual harassment cognizable under Title VII. Bray admits that
Adams never threatened or intimidated her. Def. Rule 56.1(a) Stmt. ¶ 118. The alleged
comments largely consist of discussions of Adams' alleged "dominatrix" activities and
suggestions that plaintiff should "sleep with men for money" and amount, at most, to vulgar
banter. See Def. Rule 56.1(a) Stmt. ¶¶ 107-12, 114, 117.

As to Adams' comments that Bray walked "too feminine" [sic] and suggestions that Bray

3

should look "more in control" while on duty (Def. Rule 56.1(a) Stmt. ¶¶ 115-16), they are entirely void of any sexual reference and no reasonable jury could find they contributed to a hostile working environment. Cf. Faragher, 524 U.S. at 787-88; Baskerville, 50 F.3d at 430-31.

Even in cases involving more offensive comments and ones lustful of the plaintiff, the alleged actions were not sufficiently severe or pervasive to create a hostile working environment. See Gleason v. Mesirow Financial Inc., 118 F.3d 1134 (1997) (employee's allegations that manager told employee he spent weekend at nudist camp, told employee he dreamt of holding her hand, commented on co-worker's anatomy, referred to female customers as "bitchy" or "dumb," and appeared to be ogling other female employees were insufficient to support hostile environment claim); Bevilacqua v. Cubby Bear Ltd., No. 98 C 7568, 2000 WL 152135 at *6 (N.D. Ill. Feb. 4, 2000) (frequent and vulgar comments and questions about plaintiff's sexual activities with her boyfriend and other men insufficient to create a hostile environment) (attached hereto); Spencer v. Commonwealth Edison Co., No. 97 C 7718, 1999 WL 14486, *8-10 (N.D. Ill. Jan. 6, 1999) (finding that crude comments, sexually explicit t-shirts, graffiti, horseplay and derogatory jokes about women did not create a hostile environment) (attached hereto). Thus, Adams' alleged actions did not create an objectively hostile work environment.

Indeed, the Supreme Court has "emphasized . . . the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" Oncale v. Sundowner Offshore Serv. Inc., 523 U.S. 75, 81 (1998) (quoting Harris, 114 S. Ct. at 371). "Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." Oncale, 523 U.S. at 81. A review of Bray's allegations of Adams' alleged comments from an objective perspective show that these

4

comments were at most tacky bantering rather than severely hostile or abusive remarks. See
Def. Rule 56.1(a) Stmt. ¶¶ 107- 118.

Moreover, there is no evidence that Adams' alleged comments and actions related to her
alleged "dominatrix" activities, such as allegedly buying pallets for a dominatrix cage, were
"because of [plaintiff's] sex" as required to establish actionable sexual harassment. See Oncale,
118 S. Ct. at 1002. "'The critical issue, Title VII's text indicates, is whether members of one sex
are exposed to disadvantageous terms or conditions of employment to which members of the
other sex are not exposed.'" Id. at 1002 (quoting Harris, 510 U.S. at 25) (Ginsburg, J.,
concurring). There is no evidence that was the case here. To the contrary, plaintiff herself
testified that Adams discussed her alleged dominatrix activities with males, including enlisting
male officers to allegedly help carry pallets to assemble for a dominatrix cage. Def. Rule 56.1(a)
Stmt. ¶ 112. Likewise, there is no evidence that Adams' comments were motivated by general
hostility to the presence of women in the workplace. See Oncale, 118 S. Ct. at 1002. Thus, Bray
cannot establish a genuine issue of material fact that Adams' conduct was actionable sexual
harassment.

Regardless of the objective severity, the record is clear that plaintiff herself did not find
Adams' behavior offensive. See Faragher, 524 U.S. at 787. Throughout her employment,
plaintiff concedes that she did not even believe that Adams was sexually harassing her. Def.
Rule 56.1(a) Stmt. ¶¶ 106, 118. Bray also admitted that she never told Adams to stop making
such comments. Def. Rule 56.1(a) Stmt. ¶ 118. Further precluding any inference that Bray
found Adams' behavior subjectively offensive is the fact that Bray requested to work with
Adams for her fourth remedial cycle of field training. Def. Rule 56.1(a) Stmt. ¶ 51.

2.     Askew's alleged behavior also was not sufficiently severe or pervasive

While Askew was Bray's FTO, she alleges he made several comments that constituted

5

sexual harassment. Yet, these puerile comments do not rise to the level of harassment under

Title VII. See Baskerville, 50 F.3d 482.

> • While patrolling, Askew allegedly brought Bray to a lot and stated that "when he was a
> teenager, he used to come to [the lot] to have sex, and that other officers would come
> there while on duty." And then he commented that "[Bray] might end up back there."
> Def. Rule 56 Stmt. ¶ 93.

> • Askew took Bray to a location where he said they "find dead bodies back there" and
> then allegedly stated that two sergeants "got caught" there "performing oral sex[]." Def.
> Rule 56 Stmt. ¶ 94.

> • Allegedly "cracked jokes" about Bray's fertility, saying Bray "better not get too close to
> you because you might get pregnant, after he found out she had five children." Def. Rule
> 56 Stmt. ¶ 95. These comments usually happened in the parking lot with other people
> present. Id.

Askew also asked her to come with her children to the movie theater where he worked a second

job. Def. Rule 56 Stmt. ¶ 96. However, the fact that Askew asked her to come with her

children precludes sexual innuendo as does the fact that he also invited his other co-workers to

come to the movies because he could get them in free. Id.

Bray alleges additional instances of sexual harassment by Askew after he was no longer

her FTO and when even plaintiff admits she no longer considered him to be her supervisor. Def.

Rule 56 Stmt. ¶ 97. The few other comments alleged to have occurred after the training cycle,

such as "anyway, you're too young to be thinking about marriage, you should go out and fuck

everybody," were mild and far from being objectively offensive. Def. Rule 56 Stmt. ¶ 99. See

Faragher, 524 U.S. at 787-88. Bray also alleges that Askew told another officer not to type up a

to/from letter requesting plaintiff work with that officer because "we're already spoon feeding

her now" and then he said "you [Bray] already owe me some anyway." Def. Rule 56 Stmt. ¶

103. Bray "took" this to be a "sexual" reference, but there is no evidence that it was meant in

that context.

The only other conduct that occurred while Askew was no longer her FTO was an alleged

6

brief touching of Bray's ankle area on one occasion, an alleged bear hug in a revolving door at a crowded court house that same day, and a brief touching of her bullet proof vest over her breast on three occasions. Def. Rule 56 Stmt. ¶¶ 97-98, 100-102. Each of these instances lasted only one second and at least one or more persons were present. Def. Rule 56 Stmt. ¶¶ 100-102.

Taken together, Askew's behavior, including these instances, is insufficient to create an objectively hostile work environment under Seventh Circuit standards. See Minor v. Ivy Tech State Coll., 174 F.3d 855, 858 (7th Cir. 1999) (putting arms around plaintiff, kissing and squeezing her, and saying "Now is this sexual harassment?" did not constitute sexual harassment, notwithstanding supervisor's prior acts, including calling employee frequently and talking to employee in a "sexy voice"); Adusumilli v. City of Chicago, 164 F.3d 353, 361 (7th Cir. 1998) (sporadic touching, inappropriate remarks and jokes insufficient to create a hostile work environment); Saxton v. American Tel. & Tel. Co., 10 F.3d 526, 533-34 (7th Cir. 1993) (two occasions of male supervisor rubbing his hand along female employee's upper thigh and kissing her did not create a hostile work environment); Weiss v. Coca-Cola Bottling Co., 990 F.2d 333, 337 (7th Cir. 1993) (numerous occasions of supervisor asking plaintiff for dates, calling her a dumb blond and putting hands on her shoulder as well as attempt to kiss the plaintiff at a bar and attempts to kiss her in her office and placement of an "I love you" sign in her work area did not amount to actionable sexual harassment); Lindblom v. Challenger Day Program, Ltd., 37 F. Supp.2d 1109, 114-15 (N.D. Ill. 1999) (fondling plaintiff at a private party, touching her knee five times, touching her shoulder ten times, standing too close, staring at her and questioning her about her weekend was not actionable sexual harassment); Adusumilli v. Illinois Institute of Technology, Case No. 97 C 8507, 1998 WL 601822 (N.D. Ill. Sept. 9, 1998) (granting motion to dismiss where body and breast allegedly touched) (attached hereto). In the present case, the touching of Bray's body armor over her breast area and over four-layers of other clothing is not offensive because, in plaintiff's own words, the vest is "like a metal coverage" and about an inch think. Def. Rule 56 Stmt. ¶ 101. It is made of a stiff, dense nylon material that deadens

7

sensation beneath it. Def. Rule 56 Stmt. ¶ 101. Accordingly, the touching of her body armor over her breasts is distinct from direct contact with the breast. Further, the circumstances (e.g., that it lasted one second each time, others were present and, with the vest incidents, it was obvious Bray had her vest on as it was her outer layer) clarify that this was not a sexual overture, but at most a puerile prank. See Minor, 174 F.3d at 858 (context relevant). Thus, even if Bray's allegations are taken as true, she cannot establish a genuine issue of material fact that Askew's alleged conduct was objectively offensive. See Baskerville, 50 F.3d at 430.

Regardless, the evidence belies that Bray found Askew's behavior subjectively offensive because on more than one occasion she requested and/or accepted Askew's assistance even after he was no longer her FTO and even after the alleged touching began. For instance, on or about September 19, 2000, plaintiff requested that Askew attend felony court with her (where he allegedly touched her leg near her ankle and her ankle and allegedly later jumped into the revolving door with her) and, after that, on October 4, 2000, she accepted Askew's assistance with an arrest. Def. Rule 56.1(a) Stmt. ¶¶ 97, 102. Further, it was not until October 4, 2000 that she allegedly told Askew that she would report his conduct and then only if he touched her again. Def. Rule 56 Stmt. ¶ 103. And she admits that once she said that, Askew never touched her again. Def. Rule 56 Stmt. ¶¶ 103-04. Thus, plaintiff has failed to establish Askew's conduct was actionable under Title VII.

Since the conduct of which plaintiff complains created neither an objectively or subjectively hostile work environment, the City is entitled to summary judgment on plaintiff's sexual harassment claim.

**B.      The City Is Not Liable for the Alleged Sexual Harassment**

Even if plaintiff were able to establish the first three elements of the *prima facie* case for Title VII sexual harassment, the City is entitled to summary judgment because Bray is unable to establish the fourth element, that the City is liable for the alleged conduct. See Parkins, 163 F.3d at 132.

1.    Plaintiff cannot establish that the City was negligent

"An employer's liability for hostile environment sexual harassment hinges on whether

the harasser is the victim's supervisor or merely a co-employee." Hall v. Bodine Elec. Co., 276

F.3d 345, 355 (7th Cir. 2002). Neither of the officers who allegedly harassed plaintiff were

plaintiff's "supervisor" as that term has been defined under Title VII. See, e.g., Hall, 276 F.3d at

355. "[T]he essence of supervisory status is the authority to affect the terms and conditions of

the victim's employment. This authority primarily consists of the power to hire, fire, demote,

promote, transfer, or discipline an employee." Hall, 276 F.3d at 355 (citing Parkins v. Civil

Constr. of Ill. Inc., 163 F.3d 1027, 1034 (7th Cir. 1998)). "Absent an entrustment of at least

some of this authority, an employee does not qualify as a supervisor for purposes [of] imputing

liability to an employer." Id. (holding that the alleged harasser who directed the plaintiff's

work, provided input into her performance evaluations and was charged with training her, was

not a supervisor under Title VII; authority to oversee and authority to discipline is not enough to

establish supervisory status). See also Parkins, 163 F.3d 1027 (plaintiff's harassers, while

foremen, were not supervisors because they were "laborers" who lacked the authority to make

final decisions with respect to hiring and firing).

Here, it is undisputed that Askew or Adams have no authority to hire, fire, demote,

promote, transfer or even discipline an employee (Def. Rule 56 Stmt. ¶¶ 18, 25), and therefore,

are not "supervisors" for Title VII purposes. Besides, even low level supervisors with authority

to oversee and discipline are not supervisors for Title VII purposes. See Durkin v. City of

Chicago, 199 F. Supp.2d 836, 947-48 (N.D. Ill. 2002) (citing Hall, 276 F.3d 355 (citing cases)).

In Durkin, the court held that Chicago police academy instructors were not supervisors for Title

VII purposes. Id. Likewise, neither Askew nor Adams were supervisors for Title VII purposes

because FTOs do not have final decision-making authority. See id. Even plaintiff concedes that

they were not supervisors when they were not serving as her FTOs and that Askew was not her

9

supervisor when the alleged touching occurred.[1]  Def. Rule 56 Stmt. ¶¶ 97-98, 100-102.

To establish liability for the actions of co-workers, Bray must demonstrate that the City was "negligent either in discovering or remedying the harassment." Hall, 276 F.3d at 356. She can do neither. The CPD has a detailed sexual harassment policy (the "Policy") that was disseminated to all employees, including Bray. Def. Rule 56.1(a) Stmt. ¶¶ 10, 13-22.  While at the Chicago police academy, Bray received training on the policy and on her responsibility to report any infraction of it.  Def. Rule 56.1(a) Stmt.¶¶ 13-22. Yet, she admitted that she did not report the alleged harassment to a supervising officer, as required under the Policy, until after her termination.[2]  Def. Rule 56.1(a) Stmt.¶ 105.  The City cannot be held liable for actions occurring before Bray reported the alleged conduct, especially since her delay was inexcusable. See Gawley v. Indiana. Univ., 276 F.3d 301, 312 & n.7 (7th Cir. 2001).

Once Bray did make a complaint, the City opened an investigation. Def. Rule 56.1(a) Stmt.¶¶ 121-129. Yet Bray refused to discuss her complaint with the City's investigator. Def. Rule 56.1(a) Stmt.¶¶ 121-125, 129.  Her rebuff is inexcusable, especially in light of the fact that she then discussed her allegations with the media. Def. Rule 56.1(a) Stmt. ¶ 130. Nevertheless, after investigating her claim, including interviewing those persons that it could identify, it was determined that plaintiff's allegations were unfounded.  Def. Rule 56.1(a) Stmt.¶¶ 121-129. "As a matter of law it is not unreasonable for an employer to drop its investigation on the grounds that the allegations could not be supported because the plaintiff failed to make a statement." Durkin, 849 F. Supp.2d at 849 (citing Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1014-15 (7th Cir. 1997)).  Thus, Bray cannot show any genuine issue of material facts regarding whether the

---

[1]The only sexually harassing behavior plaintiff alleges occurred when Askew and Adams served as her FTOs were verbal comments. See supra pp. 3-6.

[2]In fact, plaintiff admits that she told the EEOC that she did not report the conduct to even another police officer, i.e., a non-supervising officer, until the day before her termination. Def. Rule 56.1(a) Stmt. ¶ 105.

City was negligent in preventing or correcting the harassment.

Significantly, regardless of the outcome of the investigation, as soon as Bray told Askew that she would report him if he touched her again, his alleged conduct stopped. Def. Rule 56.1(a) Stmt. of Facts ¶ 103. With Adams, once Bray did not attend her parties, the alleged conduct stopped as well. Def. Rule 56.1(a) Stmt. of Facts ¶ 110. In short, the City is entitled to summary judgment because it cannot be held negligent for the alleged harassment as it appropriately investigated and responded to it. In fact, by the time the conduct had been reported, it had ended.

2. Even if Askew and Adams were supervisors, the City has established its affirmative defense

Even if this Court construes the alleged harassers to be Bray's supervisors as defined under Title VII, the City is then entitled to establish the affirmative defense that is available under Ellerth and Faragher because Bray was not subjected to a tangible employment action undertaken by the harassing supervisor. Ellerth, 524 U.S. at 765; Faragher, 524 U.S. at 807-08.

As an initial matter, plaintiff's complaint does not even allege that her discharge was due to sexual harassment. Compl. ¶¶ 6-7. So, plaintiff cannot now argue that the alleged sexual harassment resulted in a tangible employment action. See Hill v. American Gen. Fin., Inc., 218 F.3d 639, 643 (7th Cir. 2000). Even if the analysis did not end there, the affirmative defense applies because plaintiff's termination did not result from either of Askew or Adams' alleged harassment "in the way that Ellerth and Faragher contemplate." Johnson v. West, 218 F.3d 725, 731 (7th Cir. 2000). "An employer is vicariously liable for tangible employment actions undertaken by the harassing supervisor." Id. (citing Faragher, 524 U.S. at 808). In Johnson, the court held that the employer was not vicariously liable for a tangible employment action even though the supervisor-harasser reported plaintiff's conduct which resulted in her discharge to higher-ups, since his superiors investigated his complaint and resolved it though the appropriate administrative channels. Id. See also Silk v. City of Chicago, 194 F.3d 788, 806 n. 17 (7th Cir.

11

1999) (holding employer not vicariously liable for tangible employment action even though supervisor submitted complaint of plaintiff's violation of regulations where employment action was taken through the appropriate administrative channels).

The affirmative defense provides that an employer can avoid liability when the employer demonstrates that: (1) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm. Faragher, 524 U.S. at 807-08. The City has established both prongs.

Under the first prong, the City has established that it exercised reasonable care to prevent and correct promptly any sexually harassing conduct. The CPD has a detailed sexual harassment policy that was disseminated to all employees, including Bray. Def. Rule 56.1(a) Stmt. ¶¶ 10, 13-22. While at the academy, plaintiff received training on this policy and on her responsibility to report any infraction of the policy. Def. Rule 56.1(a) Stmt. ¶¶ 13-22. As discussed above, Bray failed to make a report as contemplated by the policy at any time during her employment. See supra.

Under the second prong, Bray unreasonably failed to take advantage of any corrective or preventive measures available to her and failed to cooperate with the City's investigation. In Faragher, the Supreme Court explained the rationale for this prong: "The requirement to show that the employee has failed in a coordinate duty to avoid or mitigate harm reflects an equally obvious policy imported from the general theory of damages, that a victim has a duty 'to use such means as are reasonable under the circumstances to avoid or minimize the damages' that result from violations of the statute." 524 U.S. at 806-07 (internal citations omitted). Accordingly, an employee who alleges that she was sexually harassed by a supervisor must utilize the mechanisms her employer has in place in addressing complaints of sexual harassment. Murray v. Chicago Transit Auth., 252 F.3d 880, 889 (7th Cir. 2001). As discussed above, Bray did not report the alleged harassment until after it had stopped. Def. Rule 56.1(a) Stmt. ¶¶ 103, 105.

12

The City opened an investigation, but, despite the City's repeated attempts, Bray refused to cooperate. Def. Rule 56.1(a) Stmt.¶¶ 121-28. Thus, the City has established its affirmative defense and summary judgment should be granted in its favor on this claim.

## II. BRAY CANNOT RAISE A GENUINE ISSUE OF FACT AS TO WHETHER THE CITY RETALIATED AGAINST HER

To demonstrate that her employer retaliated against her in violation of Title VII, an employee may present either direct or indirect evidence of the employer's retaliatory intent. Lacking any direct evidence of retaliation, Bray must attempt to satisfy her burden through the indirect method of proof. Under this method, Bray must first present evidence sufficient to establish a *prima facie* case by showing that "after lodging a complaint about discrimination . . . only [s]he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though [s]he was performing h[er] job in a satisfactory manner." Stone v. City of Indianapolis Pub. Util. Div., 281 F.3d 640, 642-44 (7th Cir. 2002). Specifically, she must show that: "(1) she engaged in statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite meeting her employer's legitimate expectations, she suffered a materially adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." Hilt-Dyson v. City of Chicago, 282 F.3d 456, 465 (7th Cir. 2002); see Stone, 281 F.3d at 642-44. Bray's failure to satisfy the any of the elements of a *prima facie* case dooms her retaliation claim.[3] Hilt-Dyson, 282 F.3d at 465.

Bray cannot establish the first element because she admits that she did not complain of the harassment under the Policy to a supervising officer until after her discharge. Def. Rule 56.1(a) Stmt.¶ 105.

---

[3] Defendant reserves the right to contest all elements if the case proceeds beyond summary judgment.

13

As to the second element, Bray cannot establish that she was performing her job according to the City's legitimate expectations. The evidence is to the contrary. She admittedly cheated on tests and quizzes at the academy. Def. Rule 56.1(a) Stmt.¶¶ 6-7, 11-12. She failed two of her field training cycles, including one where Renee Daniels, who was not subject to plaintiff's harassment allegations, was her FTO, and received low marks for the others. Def. Rule 56.1(a) Stmt.¶¶ 29-66. In addition, each of her FTOs commented on her lack of assertiveness. See Def. Rule 56.1(a) Stmt.¶¶ 34, 36, 40, 44, 45, 47, 55-56. Plaintiff herself conceded some performance issues when she requested a remedial cycle. Def. Rule 56.1(a) Stmt. ¶¶ 48, 50. Plaintiff also admitted the underlying conduct that constituted some of her most egregious performance deficiencies, including that she remained in the car while her partner was arresting a man whom she described as "big" and "stocky." Def. Rule 56.1(a) Stmt.¶¶ 60-64, 70-72. Further, her productivity was low after she finished her training cycles so much so that she only made one (1) arrest, recovered one (1) vehicle, wrote eight (8) parking tickets and made three (3) Chicago Transit checks over 20 working days, the equivalent of an average officer's daily activity. Def. Rule 56.1(a) Stmt.¶ 79. Consequently, she also cannot prove the third element as she cannot show that an adverse action was taken despite meeting her employer's legitimate expectations.

As to the fourth element of her *prima facie* case, the record is also void of evidence that plaintiff was treated less favorably than similarly situated probationary police officers who did not engage in statutorily protected activity. See Hilt-Dyson, 282 F.3d at 465. In fact, plaintiff has not identified a single similarly situated employee who was treated more favorably.

Even if Bray were to succeed in proving her *prima facie* case, her retaliation claim cannot survive summary judgment because the City has established that it had a legitimate business reason for terminating Bray -- she performed poorly and acted in a manner inconsistent with officer safety -- and Bray cannot proffer evidence of pretext. See Hilt-Dyson, 282 F.3d at 465; Stone, 281 F.3d at 642-44; Aviles v. Cornell Forge Co., 241 F.3d 589, 592 (7th Cir. 2001).

14

"Establishing pretext requires more than excusing the employer's stated reason for its decision; the plaintiff must call the employer's honesty into question by rebutting the reason stated." Sweeney v. West, 149 F.3d 550, 557 (7th Cir. 1998). Plaintiff's excuses, such as personality conflicts, inadequate training or problems getting the car door open so she could not backup her partner while he was arresting a suspect (Def. Rule 56.1(a) Stmt.¶¶ 62, 70-72), do not establish pretext. See Stewart v. Henerson, 207 F.3d 374, 378 (7th Cir. 2000). She must show "that there was a discriminatory motive that more likely than not motivated the employer, or that the employer's proffered explanation is unworthy of credence." Rabinovitz v. Pena, 89 F.3d 482, 487 (7th Cir. 1996). She cannot do so. After all, it is undisputed that the decision-makers in her termination decision, and even the members of the Field Training Review Board that recommended her termination, had no knowledge of any protected speech. Def. Rule 56.1(a) Stmt. ¶¶ 73, 82-83, 89, 91. Thus, Bray cannot proceed to trial with her retaliation claim.

## CONCLUSION

For all of the foregoing reasons, as well as those set forth in the accompanying motion for summary judgment and supporting papers, the City respectfully requests that summary judgment be entered in its favor and against Bray and that this Court dismiss this case with prejudice.

Respectfully submitted,

MARA S. GEORGES
Corporation Counsel of the City of Chicago

By:   VALERIE DEPIES HARPER
STAN B. STEC
Assistants Corporation Counsel

Employment Litigation Division
30 N. LaSalle Street, Suite 1020
Chicago, Illinois 60602
(312) 744-4746/5002

# SEE CASE FILE FOR EXHIBITS