IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAMELA BRAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 01 C 7770 |
| ) | |
| CITY OF CHICAGO, a municipal ) | Judge Holderman |
| corporation ) | |
| ) | |
| Defendant. ) | |

**DOCKETED**
OCT 2 2 2002

FILED
OCT 1 8 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## NOTICE OF FILING

To:  Lara A. Walicek
   Ernest T. Rossiello & Associates, P.C.
   300 West Washington Street, Suite 1004
   Chicago, Illinois 60606

**PLEASE TAKE NOTICE** that on Friday, October 18, 2002, defendant filed a **Defendant City of Chicago's Reply Memorandum in Further Support of Its Motion for Summary Judgment,** with the clerk of the court for the U.S. Northern District of Illinois, Eastern Division, a true and correct copy of which is attached hereto and hereby served upon you.

DATED at Chicago, Illinois, this 18th day of October, 2002.

Respectfully submitted,

MARA S. GEORGES
Corporation Counsel of the
City of Chicago

BY: _____
VALERIE DESPIES HARPER
STAN B. STEC
Assistant Corporation Counsel

30 N. LaSalle Street
Suite 1020
Chicago, Illinois 60602
(312) 744-4746/5002

23

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAMELA BRAY, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 01 C 7770 |
| | ) | |
| CITY OF CHICAGO, a municipal corporation | ) ) | Judge Holderman |
| | ) | |
|     Defendant. | ) | |

**DEFENDANT CITY OF CHICAGO'S REPLY MEMORANDUM
IN FURTHER SUPPORT OF IT MOTION FOR SUMMARY JUDGMENT**

The undisputed evidence establishes that Bray was terminated for substandard performance and that she was not sexually harassed.

On October 23, 2000, after reviewing evidence of Bray's performance from several different sources, the Field Training Review Board (FTRB) unanimously recommended her discharge upon concluding that she was unable to adequately perform police duties, was unwilling to assist and back up her partner when elements of danger and stress exist, and failed to follow safety procedures. Def. Stmt. ¶¶ 60-61, 64, 74-85.[1] Then, Deputy Superintendent Schenkel independently reviewed performance-related records and terminated Bray's employment. Id. at ¶¶ 86-87. It is undisputed that neither the FTRB nor Schenkel had any knowledge of plaintiff's alleged sexual harassment allegations. Id. at ¶ 91.

Effectively conceding that none of the FTRB members or decision-makers intentionally retaliated against her (see Plf. Resp. p. 5), Bray argues that they were unwitting pawns of police officer Bruce Askew, whom she supposedly threatened to report if he "touched her again." Not only is her alleged statement of intent insufficient to constitute protected activity, but plaintiff's theory ignores that several independent sources, including officers not alleged to have harassed her and without knowledge of her alleged protected activity, provided information confirming Bray's substandard performance and that Bray herself admitted to deficiencies. For instance,

---

[1] Defendant's citations to its 56.1(a) Statement of Undisputed Material Facts for this brief shall be "Def. Stmt. ¶ __."

Lieutenant Zapolsky reported that Bray sat in the squad car while her partner was effecting an arrest; a fact which she herself admits. Def. Stmt. ¶¶ 58-59, 60-64, 81-87. Bray also admitted to other deficiencies, including lack of confidence and failing to handcuff a prisoner until ordered to do so. Id. at ¶¶ 6-7, 10-12, 29-37, 40-45, 47-50, 52-56, 59, 70, 72. Moreover, Bray failed two of her four training cycles and these were the cycles she admits were free of sexual harassment and retaliation. Id. at ¶¶ 34, 47; Plf. Resp. p. 4. Since Bray is merely second-guessing the wisdom of the City's decision to discharge her, her retaliation claim is doomed.

Bray's sexual harassment claim also cannot survive summary judgment. As an initial matter, the alleged conduct was neither subjectively nor objectively hostile. Bray also cannot establish that the City is liable for the alleged conduct of officers Bruce Askew or Donna Adams. The record is clear that they were merely "co-workers" for Title VII purposes, who, at most, could recommend review of a probationary employee's performance to the FTRB, and plaintiff cannot establish that the City was negligent in remedying or discovering the alleged harassment. See Id. at ¶¶ 8, 12-22, 18, 25, 119-29. Despite the City's well-established sexual harassment policy, Bray delayed reporting the alleged conduct until after her termination; well after the alleged harassment had ceased. Id. at ¶¶ 10, 12-22, 105. In any event, even if they were supervisors, the City is still not liable because it is undisputed that Askew and Adams did not make the termination decision. Id. at ¶¶ 67-88.

## I. BRAY HAS FAILED TO CREATE A GENUINE ISSUE OF MATERIAL FACT THAT SHE WAS SEXUALLY HARASSED

Bray has failed to establish a *prima facie* case of hostile environment. The alleged work environment was not objectively and subjectively offensive. There also is no basis for employer's liability.

### A. The Alleged Behavior Is Not Objectively Offensive

Here, the factors that must be considered in determining if a hostile environment was created, including "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," fall short of creating a work environment that a reasonable person would find intolerable. Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998); Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430 (7th Cir. 1995).

2

With respect to the frequency of the discriminatory conduct, the record fails to support plaintiff's assertions that the alleged harassment occurred "[o]n a persistent basis" (Plf. Resp. p. 1). The evidence plaintiff offers is inadmissible because it lacks foundation and/or is hearsay (see Def. Motion to Strike). Further, the evidence contradicts Bray's characterizations of its frequency. For instance, she initially argues that the alleged harassment "occurr[ed] virtually every day for approximately five months" (Plf. Resp. p. 1), but later concedes, quite inconsistently, that she was not harassed during her first and third field training cycles (Plf. Resp. p.4). Defendant points to its Rule 56 Statement which accurately recounts the number of instances of sexual harassment alleged. Def. Stmt. ¶¶ 93-103, 107-117. As those facts show, the alleged incidents are more accurately described as sporadic. See Id.

As to the severity of the behavior, it is restricted to non-actionable puerile comments and antics. With respect to Adams, Bray agrees that the alleged discussions of her supposed "dominatrix" activities were not offensive (Plf. Resp. p. 8) and, indeed, Bray admits that she never told Adams to stop making such comments. Def. Stmt. ¶ 118. Rather, she argues that her "primary" allegation is that Adams "kept coercing her into soliciting sex in exchange for money." Plf. Resp. p. 8. But construing the record in plaintiff's favor, it fails to support that Adams did anything more than banter. There is simply no evidence of "coercion." Bray even admits that Adams never intimidated her or physically threatened her. Def. Stmt. ¶ 118. Nor does the record support that Adams "kept" doing this. Plaintiff identifies only three instances of bantering about solicitation – one where Adams gave Bray an RC Cola Card, one where Adams allegedly said Bray wants an application and another where Adams allegedly suggested Bray could use the money -- and even these fail to comply with Rule 56.[2] Id. at ¶¶ 107-09. Taken in context, no reasonable person, much less a police officer, could misconstrue this as coercing the solicitation of sex. See Oncale, 523 U.S. at 81 ("common sense" and "an appropriate sensitivity to social context" are relevant considerations). Additionally, Bray has no evidence that females were exposed to Adams' alleged behavior more than males or that Adams' comments were motivated by general hostility to the presence of women in the workplace. See Oncale 118 S. Ct. at 1002

---

[2] In addition, even these allegations fail to comply with Rule 56 and are one of the subjects of Defendant's Motion to Strike.

3

(Ginsburg, J., concurring).

With respect to Askew, Bray emphasizes his behavior towards other woman, such as ogling at women leaving a nightclub and some immature comments about other woman, such as "nice rack" (Plf. Resp. pp. 2,8). Since these comments were not directed towards Bray, they did not contribute to the alleged harassing environment. See Spencer v. Commonwealth Edison Co., No. 97 C 7718, 1999 WL 14486, at *8-10 (N.D. Ill. Jan. 6, 1999) (finding that crude comments, sexually explicit t-shirts, graffiti, horseplay and derogatory jokes about women did not create a hostile environment) (attached to Def.'s Initial Mem.). Significantly, Askew made no comments about Bray's anatomy.

Bray also makes much of the fact that, as she described it, Askew "cracked jokes" about her fertility, such as "better not get too close to you because you might get pregnant" (Plf. Resp. pp. 2-3). But these wisecracks, which were usually made when others were present, are also merely puerile (the most boorish quip being "you wouldn't have so many children if you swallowed" (Def. Stmt. ¶ 95)) and "not objectively offensive when judged from the perspective of a reasonable person in the [Bray's] position, considering 'all the circumstances.'" See Oncale, 523 U.S. at 81 (quoting Harris, 114 S. Ct. at 371). Indeed, plaintiff did not voice any objections to these jokes. Def. Stmt. ¶ 95.

In an attempt to bolster her case, Bray also mischaracterizes Askew as "asking her out" although the record supports no such inference. It merely supports that Askew offered free admission to Bray and her children to the movie theater where he worked a second job. Def. Stmt. ¶ 96. The fact that Askew asked her to come with her five children to his second job precludes sexual innuendo as does the fact that he also invited other male and female co-workers because he could get them in for free. Id. Additionally, Askew's invitations to Bray's family are even more innocuous given that Askew did not make them face-to-face, but through messages over a computer system. Id. Another factor undermining plaintiff's characterization of Askew's invitations is that when she declined for her family, there is no evidence that he took any offense. Thus, no reasonable jury could find these incidents contributed to a hostile working environment. Cf. Baskerville, 50 F.3d at 430-31.

Bray also alleges that when he was no longer her FTO, Askew told another officer not to

4

type up a letter for Bray because "we're already spoon feeding her now" and then he said "you already owe me some anyway." Def. Stmt. ¶ 103. Bray "took" this to be a "sexual" reference, but there is no evidence that it was meant in that context -- a point which plaintiff ignores in her response. Plf. Resp. p. 8. Once again, no reasonable jury could find that this comment contributed to a hostile working environment. Cf. Baskerville, 50 F.3d at 430-31.

Accordingly, Askew and Adams' alleged comments do not come close to contributing to a hostile work environment. Indeed, courts in this circuit have found even more personal and potentially offensive comments were not sufficiently severe or pervasive to create a hostile working environment. See Def. Mem. p. 4 (citing cases).

With respect to the alleged five brief touchings (a touching of Bray's ankle area in a crowded court room, a bear hug in a revolving door at a crowded court house and a one-second touching of her bulletproof vest over her breast and four layers of clothing on three occasions) -- none of which occurred when Askew was her FTO -- they fall well within the forms of physical contact which the Seventh Circuit has recognized as "although unwelcome and uncomfortable for the person touched, are relatively minor." Hostetler v. Quality Dining Inc., 218 F.3d 798, 806 (7th Cir. 2000); Baskerville, 50 F.3d at 430-31. See Def. Stmt. ¶¶ 97-98, 100-102. Each of the alleged instances lasted only one second and at least one or more persons were present. Id. at ¶¶ 97-98, 100-102.

More specifically, the brief touching of plaintiff's ankle in a crowded courtroom while she was wearing pants and socks is not at all offensive, especially given that Askew did that to get her attention to discuss the court proceedings. Def. Stmt. ¶ 97. Askew's alleged bear hug while moving in the revolving door of the crowded court building is also, at most, a puerile antic. See Id. at ¶ 98. While plaintiff tries to characterize the bear hug as his "hard penis" pushing against her "buttocks" (Plf. Resp. p. 8), there is no foundation for establishing that what she supposedly felt was a penis, much less an erect one, especially given all the gear an officer wears. Lastly, the touching of Bray's body armor over her breast area and over four layers of other clothing is not offensive because, in plaintiff's own words, the vest is about an inch thick of "metal coverage" Def. Stmt. ¶ 101. Additionally, the vest undisputedly is designed to absorb and distribute the force of any contact, and made of a stiff, dense material that deadens sensation

5

beneath it. Id. Accordingly, the touching of her bulletproof vest over her breasts is distinct from direct contact with the breast. Further, the circumstances, including that it was only one second each time, others were present and it was obvious Bray had her vest on as it was her outer layer over four other layers of clothing, clarify that this was not sexual in nature, but at most a puerile antic. See Minor, 174 F.3d at 858 (context relevant). Taken together, Adams and Askew's alleged comments and the brief touchings are insufficient to create an objectively hostile work environment. See Def. Initial Mem. p. 7 (citing cases).[3]

With respect to the factor of physically threatening or humiliating, Bray admits that neither Askew nor Adams ever threatened or intimidated her. Def. Stmt. ¶¶ 104, 118. Finally, belying plaintiff's assertions that the alleged harassment interfered with her work is the fact that the only two cycles she passed were the ones during which she allegedly was harassed. Plaintiff also asserts that she argued constantly with Adams about soliciting sex for money (Pl. Resp. p. 8), yet the only argument she even tries to lay a foundation for is that when she asked Adams to stop for coffee, Adams would say we are busy now and only let them get coffee later. Def. Resp. to Pl LR56.1(b)(3)(B) Stmt. ¶¶ 175-76. That is hardly an argument, much less one of a sexually harassing nature.

### B. The Alleged Behavior Is Not Subjectively Offensive

Regardless of the objective severity, the record is clear that Bray herself did not find the alleged behavior offensive. See Faragher, 524 U.S. at 787. With respect to Adams, not only did Bray concede that while she was employed she did not believe that Adams was sexually harassing her (Def. Stmt. ¶¶ 106, 118), but even now Bray admits that Adams did not sexually harass her during her third cycle (Pl. Resp. to Def. Stmt. ¶ 51; Pl. Resp. p. 4). Bray also admitted that she never told Adams to stop making such comments. Def. Stmt. ¶ 118. Further, Bray requested to work with Adams for her fourth remedial cycle of training. Id. at ¶ 51.

---

[3]Minor v. Ivy Tech State Coll., 174 F.3d 855, 858 (7th Cir. 1999); Adusumilli v. City of Chicago, 164 F.3d 353, 361 (7th Cir. 1998); Saxton v. ATT&T, 10 F.3d 526, 533-34 (7th Cir. 1993); Weiss v. Coca-Cola Bottling Co., 990 F.2d 333, 337 (7th Cir. 1993); Lindblom v. Challenger Day Prog., Ltd., 37 F. Supp.2d 1109, 114-15 (N.D. Ill. 1999); Adusumilli v. IIT, No. 97 C 8507, 1998 WL 601822 (N.D. Ill. Sept. 9, 1998) (granting motion to dismiss where body and breast allegedly touched)(attached to Def.'s Initial Mem.).

6

The evidence also belies that Bray found Askew's behavior offensive because on more than one occasion she requested and/or accepted Askew's assistance even after he was no longer her FTO and even after the alleged touching began. For instance, on or about September 19, 2000, she requested that Askew attend felony court with her and, after that, on October 4, 2000, she accepted Askew's assistance with an arrest. Id. at ¶¶ 97, 102. Further, it was not until October 4, 2000 that she "had enough" and indicated to Askew that he should stop. Plf. Resp. p. 4. She admits that the once she told him to stop, Askew never touched her again. Def. Stmt. ¶¶ 103-04. Plaintiff has failed to show Adams or Askew's conduct was actionable under Title VII.

### C. The City Is Not Liable for the Alleged Sexual Harassment

The City is also entitled to summary judgment on plaintiff's sexual harassment claim because Bray is unable to establish the fourth element of her prima facie case, that the City is liable for the alleged conduct. See Parkins, 163 F.3d at 1032-33.

#### 1. Adams and Askew were Bray's co-workers and Bray cannot establish that the City was negligent

Neither of the alleged harassers were "supervisors." See Def. Initial Mem. pp. 9-10. "[T]he essence of supervisory status is the authority to affect the terms and conditions of the victim's employment [which], primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee." See Hall v. Bodine Elec. Co., 276 F.3d 345, 355 (7th Cir. 2002). While plaintiff makes the conclusory statement that as her FTOs, Askew and Adams had the ability to affect her employment, no facts support that they had the power to hire, fire, demote, transfer or discipline her. Def. Stmt. ¶¶ 8, 25. Plaintiff's arguments also fail to support a finding that FTOs are supervisors (Pl. Resp. p. 10).[4] First, plaintiff speculates that "but for" Askew and Adams' representations to the FTRB, she would never have been terminated so they must be supervisors (Id.). Several cases have implicitly rejected this reasoning by finding that individuals reporting a plaintiff's conduct were not supervisors for Title VII purposes even if it led to discharge. See, e.g., Pfau v. Reed, 125 F.3d 927, 937 (5th Cir. 1997) (employee was not supervisor where he only had the authority to recommend awards or disciplinary action).

---

[4]Plaintiff's double hearsay statement in Footnote 3 of her Response also lacks foundation and context; therefore, it cannot establish that Askew and Adams were Bray's supervisors.

7

Second, plaintiff's attempts to rely on Askew's understanding of the role of FTO is misplaced.[5] Not only is there no foundation for Askew's understanding, but the Seventh Circuit has refused to rely upon an alleged harasser's representation of his authority. Parkins, 163 F.3d at 1035. The Parkins court held that the alleged harasser was not a supervisor even though he had bragged about his ability to have employees fired. Id. It noted, "even if his boast were accurate, this does not elevate him to supervisory status." Id. (citing Pfau, 125 F.3d at 937). In fact, courts have held that even low level supervisors with authority to oversee and discipline are not supervisors. See Durkin v. City of Chicago, 199 F. Supp.2d 836, 847-48 (N.D. Ill. 2002) (citing cases)). Durkin is highly instructive because the court held that Chicago police academy instructors were not supervisors for Title VII purposes even though they outrank probationary police officers in the chain of command, had some authority as a group leader and some authority to discipline. Id. In so doing, the court noted that "[t]he Seventh Circuit has repeatedly held that this kind of 'marginal discretion' is not enough to establish supervisory status." Id. at 848.

Finally, even Bray concedes that Askew and Adams were not supervisors when her performance was recommended for review and that Askew was not her supervisor when the alleged touchings occurred. See Def. Stmt. ¶¶ 97-98, 100-102.

Bray cannot establish liability for the actions of these co-worker because she cannot demonstrate that the City was "negligent either in discovering or remedying the harassment." Hall, 276 F.3d at 356. It is undisputed that the CPD disseminated its detailed sexual harassment policy (the "Policy") to all employees and that it requires Bray to report any harassment. Def. Stmt.¶¶ 10, 12-22. Bray admitted that she did not report the alleged harassment to a supervisor as required under the Policy until after her termination. Def. Stmt.¶ 105. The City cannot be held liable for actions occurring before Bray reported the alleged conduct. See Gawley v. Indiana Univ., 276 F.3d 301, 312 & n.7 (7th Cir. 2001); Faragher, 118 S. Ct. at 2293 ("[A] demonstration of [an unreasonable failure to use any complaint procedure provided by the employer] will normally suffice to satisfy the employer's burden under the second element of the defense."). Despite admitting she did not report the behavior, plaintiff argues that defendant is still unable to

---

[5]Similarly, police officer Jones' alleged statement to Bray that "pretty much" Askew and Adams "can get you fired at any time" is inadmissible hearsay, speculative and lacks foundation.

8

avail itself of the Ellerth affirmative defenses because she "attempted" to report something on October 20, 2000. Pl. Resp. p. 11 n.4. Her "attempt[] to report" characterization is not supported by the record. Def. Resp. PlLR56.1(b) ¶ 254. It is void of any evidence that could be construed as putting the City on notice of her allegations.[6] This omission is fatal. Zimmerman v. Cook County Sheriff's Dep't, 96 F.3d 1017, 1019 (7th Cir. 1996) (a plaintiff "cannot withstand summary judgment without presenting evidence that she gave the employer enough information to make a reasonable employer think there was some probability that she was being sexually harassed").

Once Bray did make a complaint, even though it was after her discharge, the City opened an investigation. Def. Stmt.¶¶ 121-129. Yet Bray refused to discuss her complaint with the City's investigator. Id. at ¶¶ 121-125, 129. Her rebuff is inexcusable, especially since it was upon the advice of counsel and she then discussed her allegations with the media. Id. at ¶¶123, 130. Nevertheless, after a good faith investigation of her complaint, it was determined that Bray's allegations were unfounded. Id. at ¶¶ 121-129. See Durkin, 849 F. Supp.2d at 849 ("As a matter of law it is not unreasonable for an employer to drop its investigation on the grounds that the allegations could not be supported because the plaintiff failed to make a statement.") (citing Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1014-15 (7th Cir. 1997)).

Lastly, it is undisputed that as soon as Bray allegedly threatened Askew that she would report him to a supervisor if he touched her again, the allegedly harassing conduct stopped. Def. Stmt. ¶ 103. With Adams, once Bray did not attend her parties, the alleged conduct stopped as well. Id. at ¶ 110. In short, the City is entitled to summary judgment because it took reasonable steps to prevent harassment and acted appropriately once it became aware of Bray's allegations.

2.  Regardless, the City has established its affirmative defense

Even if this Court finds that Adams and Askew were supervisors, the affirmative defense available under Ellerth and Faragher warrants summary judgment because Bray was not discharged by them. See Ellerth, 524 U.S. at 765; Faragher, 524 U.S. at 807-08.

---

[6]Despite this void, plaintiff leaps to the argument that "summary judgment is a singularly inappropriate time to a resolve a 'he said, she said' kind of dispute." Pl. Resp. p. 11; however, there is no he said-she said dispute because plaintiff has no record of what she actually said.

9

As an initial matter – one which Bray ignores in her response -- plaintiff cannot argue that the alleged sexual harassment resulted in a tangible employment action because her complaint does not allege that her discharge was due to sexual harassment. See Def. Initial Mem. p. 11 (citing Compl. ¶¶ 6-7; Hill v. American Gen. Fin., Inc., 218 F.3d 639, 643 (7th Cir. 2000)). Rather, it alleges retaliation. Compl. ¶ 7. Even if she had adequately pled this, the affirmative defense applies because Bray's termination did not result from the alleged harassment "in the way that Ellerth and Faragher contemplate." Johnson v. West, 218 F.3d 725, 731 (7th Cir. 2000). "An employer is vicariously liable [only] for tangible employment actions undertaken by the harassing supervisor." Id. (emphasis added in original) (citing Faragher, 524 U.S. at 808). Even Bray concedes that the alleged harassers were not the decision-makers for her termination. See Pl. Resp. p. 5. Accordingly, the City cannot be vicariously liable. See Silk v. City of Chicago, 194 F.3d 788, 806 n. 17 (7th Cir. 1999) (holding employer not vicariously liable for tangible employment action even though supervisor submitted complaint of plaintiff's violation of regulations where employment action was taken through the appropriate administrative channels). This case is similar to Johnson, where the Seventh Circuit rejected vicarious liability for a tangible employment action even though the supervisor-harasser reported plaintiff's conduct, which resulted in her discharge, to higher-ups, since his superiors investigated his complaint and resolved it though appropriate administrative channels. 218 F.3d at 731. Here, even though Adams and Askew each recommended review of Bray's performance, the FTRB and Schenkel independently assessed her performance. Def. Stmt. ¶¶ 67-88.

Further, the City is not liable because (1) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior and (2) Bray unreasonably failed to take advantage of any preventive or corrective opportunities provided by the City to avoid harm. Faragher, 524 U.S. at 807-08. Under the first prong of the Ellerth and Faragher affirmative defenses, it is undisputed that the CPD disseminated a detailed sexual harassment policy to all employees. Def. Stmt. ¶¶ 10, 12-22. As discussed above, Bray failed to make a report as contemplated by the policy at any time during her employment. See supra pp. 8-9. Once she made her post-termination complaint, as discussed above, the City took all reasonable care to investigate and correct the behavior. See supra p. 9. Under the second prong, the evidence

10

establishes that Bray unreasonably failed to take advantage of any corrective or preventive measures available to her and failed to cooperate with the City's investigation. Even an employee who alleges that she was sexually harassed by a supervisor must utilize the mechanisms her employer has in place in addressing complaints of sexual harassment. Murray v. CTA, 252 F.3d 880, 889 (7th Cir. 2001). But, as discussed above, Bray did not report the alleged harassment until after it had stopped. Def. Stmt.¶¶ 103, 105. The City opened an investigation, but, despite the City's repeated attempts, Bray refused to cooperate. Id. at ¶¶ 121-29. In short, Bray "acted in precisely the manner that a victim of sexual harassment should not act in order to win recovery." Shaw v. Autozone, Inc., 180 F.3d 806, 813 (7th Cir. 1999). Thus, the City has established its affirmative defense and summary judgment should be granted in its favor.

## II. BRAY HAS FAILED TO RAISE A GENUINE ISSUE OF FACT AS TO WHETHER THE CITY RETALIATED AGAINST HER

Plaintiff's retaliation claim is limited to alleging that she was discharged for telling Askew she would report him if he touched her again (Pl. Resp. p. 11).

### A. Bray Cannot Establish a Prima Facie Case of Retaliation

Acknowledging the lack of direct evidence of retaliation, plaintiff argues that she can establish a prima facie case through the indirect method of proof. See Pl. Resp. p. 11. However, in attempting to do so, she does not follow the elements set forth in Stone v. City of Indianapolis Pub. Util. Div., 281 F.3d 640, 642-44 (7th Cir. 2002) and Hilt-Dyson v. City of Chicago, 282 F.3d 456, 465 (7th Cir. 2002). Bray cannot establish any of the required elements, i.e., that: "(1) she engaged in statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite meeting her employer's legitimate expectations, she suffered a materially adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." Hilt-Dyson, 282 F.3d at 465.

Bray cannot establish the first element because she admits that she did not complain of harassment under the Policy to anyone until after her discharge. Def. Stmt.¶ 105. Plaintiff argues that does not matter because she "threatened" to report Askew. While it is true that Title VII prohibits retaliation against employees "who oppose" alleged unlawful activity, 42 U.S.C. §

11

2000e-5, the Seventh Circuit has not yet ruled on whether informal complaints are sufficient to constitute protected activity. Krause v. City of La Crosse, 246 F.3d 995, 1000 (7th Cir. 2001) (citing cases finding they do). Nevertheless, even the courts holding that informal complaints qualify require that the opposition must at least be a complaint to a supervisor. See, e.g., Arzate v. City of Topeka, 994 F. Supp. 1494, 1503 (D. Kan. 1995). Bray's alleged threat to Askew, that she would tell a supervisor if he touched her again, is certainly not a complaint to a supervisor (as the comment itself makes clear) and therefore is not protected activity even according to courts recognizing informal complaints. See Id. Plaintiff's threat to Askew is akin to a refusal to engage in unlawful activity, which is not protected. See Bowers v. Radiological Soc. of N. Am., Inc., 57 F. Supp. 2d 594 (N.D. Ill. 1999) (refusing advances and not participating in conduct not protected activity) (citation omitted); Puccini v. United Airlines, No. 98 C 8140 (N.D. Ill. Aug. 17, 1999) (dismissing retaliation claim where the plaintiff refused to comply with a request for assistance in engaging in unlawful activity) (attached hereto).

Bray's claim also falters on the second and third elements because she cannot establish that she was performing her job according to the City's legitimate expectations. It is undisputed[f] that she failed two of her four field training cycles -- the first one with Renee Daniels, who was not subject to plaintiff's harassment allegations, and the third with Adams who plaintiff admits did not sexually harass her during that cycle -- and received low marks for the others. Def. Stmt.¶¶ 29-66. In addition, each of her FTOs commented on her lack of assertiveness and Bray herself admitted to a lack of confidence. See Id. at ¶¶ 34, 36, 38, 40, 44, 45, 47-50, 55-56. Plaintiff also admitted the underlying conduct that constituted some of her most egregious performance deficiencies, including that she remained in the car while her partner was arresting a "big" and "stocky" man. Id. at ¶¶ 60-64, 70-72. Nor does she dispute that her productivity was low after she finished her training cycles. Id. at ¶ 79.

Plaintiff also attempts to survive summary judgment by claiming, in contradiction of the record, that the "only negative information concerning Bray are the reports prepared by Askew and Adams after Bray [threatened to report Askew]." Pl. Resp. p. 13. However, the record shows that several other officers submitted negative information. For instance, before plaintiff allegedly threatened to report Askew, Daniels failed plaintiff during her first cycle and Adams failed

12

plaintiff during her third cycle. See Def. Stmt.¶¶ 34, 47. In addition, Lieutenant Zapolsky provided negative information when he reported that she remained in her car while her partner effected an arrest. Id. at.¶¶ 64, 78. Moreover, plaintiff's own request for a remedial cycle conceded she had performance issues.

As to the fourth element of her *prima facie* case, the record is still void of evidence that plaintiff was treated less favorably than any similarly-situated probationary police officer who did not engage in statutorily protected activity. In her response, plaintiff points to two officers -- Benny Spurgeon and Cedric Taylor. Yet, the record is void of any evidence that they had not engaged in protected activity.[7] This omission is fatal to her retaliation claim. See Id. The record also contains too little information for the Court to determine whether Spurgeon and Taylor are indeed similarly situated. See Williams v. General Mills, Inc., 926 F. Supp. 1367, 1377-79 (N.D. Ill. 1996) (analyzing many factors to determine whether alleged comparables were indeed comparables). For instance, there are no facts that Spurgeon ever failed to back up his partner or that he had Bray's particular performance problems similar to plaintiff's. Def. Resp. to PlLR56.1(b) ¶¶ 309-410; PlLR56.1(b) Spurgeon dep. p. 61-62. In addition, the paltry "facts" with respect to Spurgeon are primarily based on his conclusory testimony, lacking any foundation, that his performance problems were "similar" to plaintiff's and, therefore are insufficient. Id. Cf. Oest v. Illinois Dept. of Corr., 240 F.3d 605, 614 (7th Cir. 2001) (plaintiff failed to establish a prima facie case as he presented "only his own uncorroborated, conclusory statements that similarly-situated co-workers were treated differently"). See Def. Mot. to Strike.

The record evidence is even sparser with respect to Taylor. Plaintiff merely claims that he was initially failed by his FTO, but was given another chance and allowed to be a police officer. Pl. Resp. p. 5. There are no other facts about his record, his subsequent performance, or whether his performance problems were similar to Bray's. Thus, Bray has offered no competent evidence to establish the final prong of a prima facie case.

In her response, plaintiff relies heavily on the timing of her termination (even though not

---

[7]Bray merely argues – without any corresponding record fact – that Spurgeon did not oppose Askew's sexist behavior without addressing whether he engaged in other protected activity. Pl. Resp. p. 14.

13

an element of the prima facie case under current case law); however, this is insufficient to establish retaliation especially given her undisputed performance problems. See Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 321 (7th Cir. 1992) (holding that "timing of the complaints, standing alone, d[id] not create a genuine issue as to a causal connection" when the plaintiff "could not prove that she was terminated because of her sexual harassment complaint rather than for poor work performance"); Adusumilli, 164 F.3d at 363.

**B.      Bray cannot show that the City's reason for discharging her was pretextual**

In any event, there is no evidence that the City's legitimate, non-discriminatory business reason for discharging her -- finding she performed poorly and acted in a manner inconsistent with officer safety --- was "phoney" and a pretext for intentional discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993); Hilt-Dyson, 282 F.3d at 465. After all, it is undisputed that the decision-maker in her termination decision, and even the members of the FTRB that unanimously recommended her termination, had no knowledge of any protected speech. Def. Stmt. ¶¶ 73, 82-83, 89, 91. See Maarouf v. Walker Mfg. Co., 210 F.3d 750, 755 (7th Cir. 2000) (citation omitted) ("The critical issue is whether the person who made the decision to terminate [the plaintiff's] employment was aware of the discrimination allegations at the time, because absent such knowledge plaintiff lacks a causal link").

"Establishing pretext requires more than excusing the employer's stated reason for its decision; the plaintiff must call the employer's honesty into question by rebutting the reason stated." Sweeney v. West, 149 F.3d 550, 557 (7th Cir. 1998). To do this, Bray must "specifically refute the facts which support the City's findings and reasons for his suspension. Mills v. First Fed. Sav. & Loan Ass'n, 83 F.3d 833, 845 (7th Cir. 1996). Bray's excuses, such as personality conflicts with her first FTO, inadequate training or problems getting the car door open while her partner was arresting a suspect (Def. Stmt.¶¶ 62, 70-72), do not establish pretext. See Stewart v. Henerson, 207 F.3d 374, 378 (7th Cir. 2000). Nor do Bray's attempts to belittle the FTRB and Schenkel's safety and performance concerns. See McPhaul v. Bd. of Comm'r of Madison Cty, 226 F.3d 558, 565 n.4 (7th Cir. 2000). Additionally, not asking for the plaintiff's version of events before discharging her (although the evidence shows Schenkel did review it, Def. Stmt. ¶86, Ex. FF) is not relevant as "the pretext inquiry does not concern the fairness of the

14

employer's decision; what matters is whether the stated reasons for termination were honest." Thomas v. Habitat Co., 213 F. Supp. 2d 887, 895 (N.D. Ill. 2002).

Bray attempts to refute the FTRB's findings as well as Schenkel's termination decision by alleging that Askew tainted the results. Yet Askew exercised no control over the FTRB or Schenkel. Without evidence that the review board or Schenkel were "being manipulated . . . by a discriminatory subordinate . . . we are reluctant to allow the latter's discriminatory motive be imputed to the former." Wallace v. SMC Pneumatices, Inc., 103 F.3d 1393, 1401 (7th Cir. 1997). There is certainly no evidence of manipulation here because, as discussed above (supra pp. 1-2, 8, 12), several independent sources, including Lieutenant Zapolsky, Renee Daniels and plaintiff herself in her request for a remedial cycle, provided information indicating performance problems. See Maarouf, 210 F.3d at 755 (the taint of an alleged discriminator's discriminatory comments does not extend to independent judgments regarding his performance); Glebocki v. City of Chicago, No. 99 C 1266, 2000 WL 1898837, at *3-4 (N.D. Ill. Dec. 28, 2000) (finding only if there is evidence the Field Evaluation and Review Board acted "because of" an alleged harasser's false or misleading information or influence "might" a plaintiff be entitled to trial) (attached hereto), aff'd 32 Fed. Appx 149 (7th Cir. 2002). Since Adams as well as Askew requested that Bray's performance be reviewed, plaintiff suggests that Adams' request was in retaliation for Bray's statement to Askew that she would report him. But, the record is void of evidence that Adams even knew of plaintiff's threat to report any sexually harassing behavior. Thus, the fact that Adams also requested review of Bray's performance actually precludes plaintiff's claim of retaliation by manipulation. See Wallace, 103 F.3d at 1400-01. Further, contrary to plaintiff's assertions, there is no evidence that Askew provided any detrimental false information to the FTRB. While Askew admitted at his deposition that he scored plaintiff's evaluations more favorably than she deserved, this is hardly a lie that could taint the decision-making process against her. For these reasons, Bray cannot survive summary judgment.

By:

Respectfully submitted,
MARA S. GEORGES
Corporation Counsel of the City of Chicago

*Valerie Depies Harper*

VALERIE DEPIES HARPER
STAN B. STEC
Assistants Corporation Counsel

30 N. LaSalle Street, Suite 1020
Chicago, Illinois 60602
(312) 744-4746/5002

# SEE CASE FILE FOR EXHIBITS